May it please the court, my name is John Wilson and I represent the petitioner in this case, Mr. Victor Hugo Tapia Madrigal. We ask to reserve two minutes for rebuttal. Okay. We request that this court reverse the decision of the Board of Immigration Appeals for the reasons set forth in our brief and to clarify several points of law and to remand the case to the agency for further determination consistent with this court's ruling. Today I'd like to address two errors of law committed by the board and we'll rely on our brief for the alternative arguments. This case should be remanded to the agency because the BIA committed at least two errors of law, both of which are reversible. First, the board erred when it concluded that the Mexican government and specifically the state and local government was not unable or unwilling to control the ruthless drug trafficking organization Los Zetas. And second, the board erred when it concluded that Mr. Tapia Madrigal was not... The legal error here, Your Honor, was when the board erred in even failing to consider it. The government has certainly cast this as a factual issue, but in this case, we argue that the legal error was the board's complete refusal to even consider whether state and local governments were able or willing to control Los Zetas. Now the second error of law that I'd like to briefly address was the board's decision that Mr. Tapia Madrigal was not persecuted on account of a statutorily protected ground. Now beginning with the first error of law regarding the unable or unwilling to control standard, to be eligible for asylum relief, a petitioner must be able to prove that the government is either unwilling or unable to control the actors who are committing the persecutory acts. The standard is stated in the disjunctive. It's not an and, it's an either or. And in this case, the board erred when it focused exclusively on the federal government's willingness to control the Los Zetas drug trafficking organization. I understand your point, but do you even get to this point if there's a failure of proof? If the factual findings of the judge, of the immigration judge, clearly established that this was not about any protected reason, race, or anything else. This was about retribution for his involvement, as brief as it was, in the apprehension and transfer of this individual. I mean, do you even get to the question of whether or not the local government or the federal government can control it or is willing to control it? Do you get there?  And in fact. How? You mentioned, because it's an alternative ground, right? You can either focus on the retribution or the persecution, or the court can also focus on the unable or unwilling to control. Now, in this case. Unwilling or unable to control the persecution? And if factually the judge decides there's no evidence to support that, then what's the point? Why are we asking whether or not the local or federal government is unwilling or unable to control it? I'm just confused. That's all right, Your Honor. The legal error here was when the board failed to even consider that. They did not consider any evidence at all of whether the state and local government was able to control. If I can interject, I may be able to help. I think Judge Deary's point is, and I agree with him if this is the point, that you don't even get to the question of unwilling or unable to control unless you can show that the bad behavior is somehow persecution. That is to say, it has to be on account of a protected ground. And the question then is, okay, is retribution somehow persecution? That's the question. So what's the persecution? What's bad behavior on account of a protected ground? Let's talk about that. Right. So persecution can take many forms. And in this case, the persecution was imposed upon Mr. Tabia Madrigal because of his efforts to enforce the law and policies of the Mexican government. It was a political opinion that was imputed upon Mr. Madrigal. And the persecution, you know, it's in the record. He was kidnapped and beaten. He was shot at on an abandoned road. His mother received a threatening letter. Now, there are two different statuses that he occupies. One, he's active due to military, and the other, he is former military. That's correct. And our law is pretty clear that you cannot count it as persecution if you get hurt or injured or even killed while you're in the military because of something you did while you were in the military. You don't get imputed personal political opinion based upon what you do when you're under orders in the military unless it's quite extraordinary and you're doing something above and beyond anything that's being asked of you. And I think I'm inclined to leave the board alone on that proposition. On the other hand, some of these things are happening now that he's a former military officer, military member, never was an officer. The board specifically disagrees with the IJ that former military members are not a social group. So the question is, is he now, as a former military member, does he have a well-founded fear of persecution based upon what they are likely to do to him? Now, two things that have happened afterwards. One, he was shot at in the street, and the other is when mother got his note. That's correct, Your Honor. And it's possible, as we're trying to figure out whether he has a well-founded fear, that we could look at what happened while he was in the military insofar as it tells us that he might have a fear as to what might happen in the future. That's correct, Your Honor. Is that where we are? That is correct. And you're right. In this case, Mr. Tapia Madrigal was persecuted both while he was in the military. No, persecution is a term meaning something done that's forbidden. He was badly treated while he was in the military. He did suffer mistreatment. And in this case, we believe that that mistreatment was persecution because of the imputed political opinion. But, counsel, okay, don't keep harping on that point because the law is clear that if you're in the military and carrying out your activities, it's not imputed political opinion, so you can't get there. So I think I'd like to bring you back to the question that Judges Deary and Fletcher have focused on as well is, what is the evidence that he will be targeted? Right now you're interested in your client not having to go back to Mexico because, in effect, you say he's got a bullseye on him and the Zetas are the ones who are going to shoot at him, figuratively speaking, and the government is unwilling or actually unable to control. Now, the BIA did address that. Your Honor, the BIA addressed the federal government's willingness to battle drug-trafficking organizations like Los Zetas. Okay, and then your brief argues that, and I think it's correct, that the BIA mistakenly said some of your evidence that was before the IJ on that subject was improperly attached to the brief. I believe, and I could be wrong, but that, in fact, there was nothing in your brief before the BIA that hadn't been presented to the IJ, is that correct? That is also correct, Your Honor. Okay, so what was it that the BIA overlooked, ignored? Your Honor, there is extensive evidence that was before the BIA, as it was before the IJ. These were documents. Right, right. So there was Department of State reports, there was various scholarly articles. Hold on a second. As I recall, the BIA said that the majority, some of the documents of the five have been, but not all of them, and they were going to ignore some unspecified documents. Are you saying that we just have to assume that they ignored the most critical country reports? Your Honor, what I'm saying is that, yes, the board failed to consider these evidence of the state and local governments' lack of ability to control those state cuts and that it was in front of the board. I believe my time has elapsed. I'll save my remaining comments for rebuttal. Okay. We have from the government. May it please the Court, Your Honor, if I may please apologize at the outset. I do not normally sound like Brenda Vaccaro, but I'm sounding like Brenda Vaccaro today. I have a terrible cold. Your Honors, we ask that the petition for review be denied in this case because substantial evidence supports the agency's conclusion that Madrigal did not establish a nexus between his mistreatment and his threatened mistreatment and a protected ground. Can I get you to, over here, focus? I don't want to take you off, entirely off your opening, but I do want to focus on the unable and unwilling. We're not normally looking at extrajudicial information, but I can't help but note that the Los Angeles Times, two days ago, ran a front-page article that says Zeta's Cartel Occupies Mexico's State of Coahuila. The aggressively expanding and gruesomely violent Zeta's group dominates territory by controlling all aspects of local criminal businesses. And the article goes on to say that they are targeting businessmen. I introduce that because I'm concerned that the BIA, in its opinion on the unwilling and unable portion, which applies to withholding of removal and cap as much as it applies to any asylum claim, is that the Zetas are, in fact, a very fearful group, and there does seem to be some evidence that the government may be willing, but it certainly may be unable to control them. And if the board ignored evidence about the Zetas being unable to be controlled, no matter how willing, as the board says, that the federal government was to take its concerted efforts, aren't we looking at someone who served the Mexican government, went after the Zetas, went after the drug traffickers? Are we to assume that somebody with that record in his past, sent back into Mexico, wouldn't be at risk of very violent retribution if they identified him? And what do we do with that on this record? Because basically the BIA says we're not going to look at this allegedly new evidence, and we don't know specifically what it was that they didn't look at. Oh, okay. There's a lot in that question. Okay. The narrow question is what is it they ignored? Your Honor, they didn't ignore anything. Let me start with the procedural defect that the petitioner has alleged here. This argument is meritless. The board clearly stated that it adjudicated its case based on the evidence contained in the record before the immigration judge. It also noted what happened was the petitioner in this case attached documents to its brief on appeal. Every single one of those documents had previously been before the immigration judge. And what the board did was note that it was inappropriate to attach documents to the brief to the board on appeal in the absence of a motion to remand or a motion to reopen. Why would it be a violation of board rules to attach documents which were before the IJ? I'm sorry, could you repeat that? What would be a violation of BIA rules to attach documents to the brief, to the BIA, that had been actually submitted and considered by the IJ? There's no violation there. What they were commenting was that there were documents being attached, and they didn't understand why they were being attached if they'd already been presented to the immigration judge. If they'd looked at the record as they said they had, they would have known. So doesn't that create an impression that they really didn't look at the record or they didn't realize that what they were seeing was, in fact, part of the record that they had carefully reviewed? Well, I hope we're not getting involved in a bit of a gamesmanship. It's not gamesmanship, counsel. No, not with you, Your Honor. I mean before the board. All of these documents were previously before the immigration judge, and there was no reason to attach them to the brief. Well, I don't know whether they were strategically or tactically or by rule inappropriate, but the BIA treated them as new evidence, some of them, and we don't know what they treated them, which ones they treated as new evidence, and they said they would ignore them. I think that they read the record that was before the immigration judge, and because all of those documents that were attached to that brief were before the immigration judge, that establishes that they were reviewed. What the board didn't do, Judge Fitcher, is they didn't engage in a document-by-document comparison to see where these documents, which were now out of order, had previously appeared in the record before the immigration judge. But I can assure you they were all there, and when the board says that it adjudicated the appeal based on the record before the immigration judge, that's exactly what the board did. Let me ask you this, and this may take us over. If it does, it does. The documents that were attached to the brief to the BIA on appeal, were all of those documents in the record in front of the IJ? Yes, Your Honor. Okay, I'm now reading from the BIA. The BIA writes, moreover, the majority of the documents submitted on appeal were presented to the IJ. In other words, it is saying, I'm not looking at them. The majority of these were presented to the IJ. That's wrong. You've just told me that all of them were submitted to the IJ. In other words, there are some things in front of the IJ they're not looking at because otherwise they would not have written the word majority. And the board identified a couple of documents specifically, did it not? That had not seen press releases or something of that sort? I don't recall that. I think what occurred, Your Honor, is that the board scanned the documents and noticed that they were very similar and did not, I would admit, did not engage in a document-by-document analysis. Counsel, that's not what they said about them. They say, has not shown how the additional new articles, news articles, which predate the immigration judges are new and material evidence. Given the uncertainty, why is it simply not, as a matter of common sense, prudent to consider making sure that the board saw and considered all the documents, particularly the information, regarding local authorities' unwillingness or inability to control this violence? Why take a chance on something so vital? Well, Your Honor, I'd make two points. Number one, we know that the board examined the records before the immigration judge, so we know that it examined all the documents that were attached to the brief to the board. And secondly, as you put – No, footnote three directly contradicts what you just said. I'm sorry. As I read footnote three, they're saying that the majority of the documents attached to this brief were in front of the IJ, when in fact all of them were in front of the IJ and were not going to consider documents that had been attached. That word was used in error, Your Honor. It was. Their error, not yours. Their error. Absolutely. So I think if we take that seriously, they made a mistake, and the mistake was they didn't look at all – and didn't consider all the documents that were in the record. I can draw no other conclusion from that. I think – I do not believe that the board did a document-by-document comparison of the documents appended to the brief to the board and the documents before the immigration judge, but I think what they did was focus their attention on the documents before the immigration judge. And, Your Honor, to your point, Judge Deary, unable and unwilling to control is not a relevant inquiry if, as the government maintains, Madrigal has not established the requisite nexus between his mistreatment and protection of the right. I think that's quite right. So I'm going to come back, and I kind of went through this with the other side. The board seems to say, and I agree with the board, that former military members are indeed a social group. It disagrees with the IJ when the IJ said they're not a cognizable social group. So we can look at what happens to them as a former military member as evidence of persecution. And he's shot at, and he gets the note. And we can probably look at, if we're trying to figure out what's likely to happen to him in the future rather than what has happened to him that is itself persecution, we can look at what happened to him while he was in the military as evidence as to whether he has a well-founded fear. I have to say that the board says, I'm now on page two of its decision in AROO, however many O's there are, eight. After the respondent, I'm now just reading from the BIA. Are you with me? The paragraph beginning, after the respondent left the military, toward the bottom of page two of its decision. I'll wait until you catch up with me. After the respondent left the military, he thinks he was shot at by unknown individuals after he left a party one evening. Well, thinks he was shot at. He knows he was shot at. He thinks he knows who they were one evening and assumes the shooting was based on his anti-drug activity in the military, but he has no evidence to support that assertion, such an assertion. Well, they may not choose to believe the evidence, but his prior experience is certainly evidence that would support that he's now being shot at because of what happened earlier. Additionally, the respondent testified that his parents told him that an unknown individual came looking for him. That's very common evidence in these cases, and that a vague threatening note was sent to their house after he moved to the United States. The respondent never saw the note and was not submitted to the court. As the respondent's mother destroyed it, well, we have an explicit credibility finding, so it's not as though we're asked to say, well, he lied about what his mother told him. It strikes me as preposterous to say that there's no evidence to connect these things to what he did while he was in the military. There is some evidence, circumstantial, but to my mind, real evidence, and how do you defend what the Board said and what I just read? Well, first, Your Honor, I think that Madrigal was found credible, but just because he was found credible does not mean that the Board has to give full credence to the things that he believes. His own counsel said in closing argument that there was an inference that these things might have been related to the prior acts. And, Your Honor, I'm assuming for purposes of this argument that those aspects were related, but they still wouldn't have been on account of a protected ground. Now, why do you say that? Well, once he left the military, it's very similar to this Court's decision in Ayala. Judge Fischer, you were on that panel. And in Ayala, the Board, this Court noticed that retribution for participating in the apprehension of drug dealers while serving in the military is not the kind of persecution that is cognizable under the INA. But that's with respect to people who are in the military. Well, actually, Mr. Ayala was actually persecuted after he left the military, but it was tied to events that occurred when he was in the military. So what do we do with this notion that former military members are a social group then? Well, former military members could be a social group, and the Board accepted that premise. But there's a separation between whether or not there simply exists a particular social group and whether somebody is actually being persecuted on that ground. Let me just clarify. There's a cat claim in this, isn't there? There is. Okay, and if he is to go back as an identifiable former member of the military, and the evidence shows that, just hypothetically, the evidence shows that Zetas target former members. No cat relief? I don't think that there is evidence that Los Zetas targets former military members that are not. I'm asking you to assume that there is. Is there cat relief under those circumstances? Nexus doesn't come into it, does it? Nexus does not come into it, you're right, Your Honor. And in this case, the Board found that there was no clear probability that he would be tortured if returned because he failed to establish events that rose to the level of torture in the past. Wait a minute. If the Zetas currently are shooting and beheading people who they target, be it businessmen or former members of the military, wouldn't that automatically qualify as risk of torture? Well, I think what you're talking about there, I'm trying to see. If that were the facts. I understand, Your Honor. I think that under those facts, however, I'm not sure how any Mexican individual in this country wouldn't get cat. Former military. I understand, Your Honor. Former military. The evidence in this case, and Petitioner conceded this in his reply brief, is that there is no evidence that former military going back to Mexico are being targeted by Los Zetas. Okay, fine. So you're challenging the factual predicate of the hypothetical. If the facts are that former military officers or soldiers, if they are returned to Mexico, are at risk of being targeted by the Zetas, and the Zetas are a brutal organization, would that qualify him for cat relief? Not unless he could establish acquiescence by public officials in the Mexican government. Unable? Unable to control? The two standards are not the same. That's correct. If he cannot prove unable. I'm talking about unable. So is counsel. They're not the same standard. I'm talking about unwilling. I'll concede that the Mexican government, the BIA is correct. I have no reason to quarrel with it. The question is whether they're unable. Well, unmitigated, certainly for the purpose of acquiescence, you're talking about willful blindness. You're talking about prior unwilling. Oh, just unable. Well, you were asking me a question about cat, and in cat you have an acquiescence standard, which is higher than the unable and unwilling standard. If we're talking about unable and unwilling, which it relates to asylum and withholding of removal, this court has not found that unmitigated success is the standard for being unable. The Mexican government has made incredible, diligent, costly efforts to fight Los Ates in its country. And in Galey, for example, this court upheld an asylum denial where the Egyptian government had neither sanctioned the religious discrimination and had responded effectively. There is no way to ensure success. Can I quote to you from language that's actually in the BIA's opinion with respect to meaning of acquiescence? They're quoting from one of our opinions. The last full paragraph, which is on page 4 of the BIA's opinion, quoting from our decision, Ornelas Chavez, acquiescence requires only that the public officials were aware of the torture but, and this is now quoting from our opinion, remained willfully blind to it or simply stood by because of their inability or unwillingness to oppose it. Sounds as though we've put inability into acquiescence. To some degree, Your Honor, but if you read the entire sentence, there can be no allegation in this case that the Mexican government, after arresting 79,000 gang members, spending untold sums of money and blood to fight this drug war, that they are simply standing by because of their inability or unwillingness to oppose it. They are able to oppose it. They oppose it every day. And they are also willing to oppose it. And their efforts are all over this record. They were cited by some of the- Let me get down to brass tacks, if I will. It seems to me, I'm just now taking a commonsensical, the categories are difficult and you're very skilled and both sides are doing a nice job on this. We have a situation where this guy, serving in the military, is photographed in a transfer of prisoners. It's very clear he's targeted. He's told to take the threat back to his unit. He takes the threat back to the unit. The commanding officer doesn't believe the threat. The ten guys are beheaded. The commanding officer is later killed by these people. He gets out of the military. He's shot at. He gets a threatening note sent to his house. Somebody comes to the house looking for him. He's now in the United States and for good reason is terrified about going home. And that's the person you're saying we should send home. If I could make a few clarifications to what you just said because I don't think they're supported by the record. The first, and with all due respect, Your Honor, I just want to make sure we're clear. You're doing your job. Mr. Madrigal was a member of the 79th Battalion that was responsible for the transfer of the prisoners to the Guadalajara prison. The ten men who were beheaded and that Los Zetas told him to go back and tell Commander Leone about were from the 39th Battalion. And then Los Zetas told him, go back and tell Commander Leone that if they don't release those Los Zetas prisoners, we're going to kill the men who arrested them. And that is what they did. They did not threaten other than Madrigal being kidnapped on that one day. They did not threaten members of the 79th Battalion who participated in the prisoner transfer. Secondly, Commander Leone was not assassinated. He was not murdered by Los Zetas. There is no evidence in the record that that ever occurred. I know Mr. Madrigal thinks that's what happened, but a document that he produced to the immigration judge establishes that he was pursuing individuals, unknown individuals, around a house. They set up a perimeter. The two men tried to get away, and they ran over Commander Leone. And there is no evidence in the record that Commander Leone was incompetent or ignorant or anything other than what you just said. He just didn't believe Madrigal's comments. So we do have the threat, the kidnapping. He was shot at walking alone on the streets of Tijuana. We don't know necessarily what that means. Mexico is a very dangerous place. Secondly, with regard to the threatening note, it was not identified as being from Los Zetas, where clearly Los Zetas has a kind of a habit of taking credit for their own misdeeds because they want people to be afraid of them. It also said at the time, we know where you are, except it was sent to his parents' house, and by that point Mr. Madrigal was already in the United States. I'd point out there was no evidence in the record that Mr. Madrigal's family has been threatened. There's been no motion to reopen file with the board with regard to any new evidence of continuing threats. He came here, I believe, six years ago. So I'm not, you know, obviously this is a very difficult position always, but I think the board is correct that his fear is speculative and assumptive. Thank you. Thank you, Your Honors. Well, we've taken the government over. You have a minute left, and if you'd like to, I think you're going to have one. Thank you, Your Honor. I'd just like to briefly address a few points. First of all, the acquiescence standard under CAT and the unable or unwilling to control standard under the asylum law are functional equivalents, and there's a substantial overlap in evidence that can be used to satisfy the acquiescence standard under CAT and the unable or unwilling to control. And we believe, in this case, both the acquiescence standard and the unable or unwilling to control are satisfied. Can you then address is there anything in the evidence that was presented to the IJ that the BIA may have mistakenly ignored because of its footnote three? Was there anything in the record to show that the Zetas target former Mexican military people? Is there anything in the record that shows that Zetas target former Mexican military? Yeah, well, that would be his social group. So if he goes back, does he go back with a bullseye on his back? Because there's evidence in the record to show that, in fact, Zetas look for them whatever regiment or division or company they were in. The answer, Your Honor, is yes. And it was presented to the board. I mean to the IJ. Yes. And what was it? AR-505, which is a report of a retired former Mexican military member who was murdered by a drug trafficking organization. His name escapes me, but I believe that that is the report of the retired former Mexican military general who was murdered by a drug trafficking organization. Not necessarily the Zetas. That is correct. I'm not sure that it's specific. That is the evidence. That's the only evidence on this record. Okay. If that's your nodding yes, I'll take that as a yes. Thank you. I briefly just wanted to talk about the imputed political opinion. Judge Fletcher asked me about this a little bit, and we believe that the mistreatment that Mr. Tapia Madrigal suffered while he was a member of the military informs the persecution that he suffered after he left the military. Now, imputed political opinion can be established by either circumstantial evidence or direct evidence. Circumstantial evidence might include the timing of the persecution and all of the facts surrounding it. As the government indicated, Mr. Tapia Madrigal was targeted. He was shot at on a vacant, empty street in Tequila. He had made no enemies while he was there. There was no purpose for him to be shot at other than that he was targeted by Los Zetas. The fact that the letter that his mother received didn't contain the distinctive Z, that is conclusory. There's no evidence that Zetas used a Z mark on any type of threatening communication that they might have. So there's no logical explanation for these type of events. There's no logical explanation for him to be shot at or his mother to receive this threatening letter. So for these reasons, we would ask that this court would reverse the decision of the board and remand the case. Okay. Thank you very much. Thank you. Tapia Madrigal v. Holder now submitted for decision.
judges: Dearie, Fletcher, Fisher